**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

SEAN TAPP,
                            Plaintiff,

            v.                                              No. 05-CV-1442
                                                              (LEK/DRH)

LLOYD TAYLOR, C.O.; ST. LOUIS, Captain;
and DONALD SELSKY,
                            Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

SEAN TAPP
HF 7739
SCI Huntingdon
1100 Pike Street
Huntingdon, Pennsylvania 16654

HON. ANDREW M. CUOMO              MEGAN M. BROWN, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

    Plaintiff pro se Sean Tapp ("Tapp"), an inmate formerly in the custody of the New York

State Department of Correctional Services ("DOCS") and currently incarcerated in

Pennsylvania, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants,

three DOCS employees, violated his constitutional rights under the First, Eighth, and

Fourteenth Amendments.  Compl. (Docket No. 1)  Presently pending are Tapp's motion for

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

summary judgment and defendants' cross-motion for summary judgment, both pursuant to Fed. R. Civ. P. 56.  Docket Nos. 42, 45.  Tapp filed a response to defendants' cross-motion.  Docket No. 46.  For the following reasons, it is recommended that (1) Tapp's motion be denied and (2) defendants' cross-motion be granted in part and denied in part.

## I. Background

On November 12, 2003, while incarcerated at Bare Hill Correctional Facility ("Bare Hill"), Tapp was issued two separate misbehavior reports for creating a disturbance, twice refusing a direct order, and assaulting a staff member.  T. 8-9.[2]  Tapp alleges that at approximately 7:00 a.m., he was "physically awaken[ed] by [defendant] Taylor who was shaken [sic] [Tapp's] upper high left thigh . . . be-neath [sic] [his] buttocks."  Docket No. 45-8 at 1.[3]  Taylor denies that he physically touched Tapp, stating that he shook the end-board of Tapp's bed to wake him.  Docket No. 45-8 at 2-4.  After Tapp awoke, Taylor ordered him to get up and begin his porter duties collecting and disposing of the dormitory's garbage.  Docket No. 45-8 at 1-3.  Tapp claims that he calmly stated that he was an evening porter and that his shift had not yet begun and that Taylor responded with verbal threats and harassment with discriminatory and derogatory comments.[4]  However, Taylor alleges that

---

[2] "T." followed by a number refers to the pages of the transcript of Tapp's hearing on the disciplinary charges included with both Tapp's motion and defendants' cross-motion.  Docket Nos. 42-3, 45-13.

[3] Tapp provided a partial record of these incidents and the resulting hearings and appeals.  Thus, as defendants have provided a complete record and to avoid confusion, citations herein are to defendants' filing.

[4] Tapp's recollection of the facts was supported by various inmate witnesses' testimony.  However, during investigations by the Office of the Inspector General, it was

after giving Tapp multiple direct orders to begin his porter duties, Tapp became enraged

and defiant before commencing work.  Id.  As a response to Tapp's defiant behavior, Taylor

issued the first misbehavior report at approximately 12:30 p.m. and placed Tapp in cell

confinement.  Docket No. 42-3 at 6.

   While Tapp was in cell confinement, a tray of food was brought to the dormitory for him.

T. 14.  Tapp was given the meal and when he left his cell to ask permission to dispose of

the tray, Tapp was reprimanded by Taylor.  T. 14,-15, 34, 39, 43.  Additionally, Tapp claims

that while he was on cell confinement and drafting a grievance against Taylor, Taylor

repeatedly approached Tapp's cell and observed Tapp writing the grievance while

continuing to berate, threaten, and harass Tapp.  Docket No. 46-7; see also T. 39.

   At approximately 1:40 p.m., Taylor called Tapp to his desk to verify the information on

Tapp's identification card ("ID card"), which was necessary to complete the first misbehavior

report.  T. 15, 26, 29, 35, 43-44, 62; Docket No. 45-7 at 4-6, 10, 13.  Tapp claims that he

provided the ID card to Taylor by placing it on the desk while Taylor was on the telephone.

T. 15-16. Tapp, supported by certain inmate-witnesses, claims that Taylor began verbally to

assault him, he turned to return to his cell, and Taylor followed him and punched Tapp in

the back of the head.  T. 35, 44; Docket 45-7 at 13.  Taylor alleges that Tapp refused to

give him the ID card, walked away, refused to comply with his repeated orders to surrender

the ID card, and then turned, pushed Taylor in the chest, and punched him in the face.

Docket No. 45- 7 at 1, 5, 6, 10, 11, 13; T. 65, 67.

   A struggle ensued in which Taylor and Tapp fell to the floor, causing Taylor to hit his

---

noted that the majority of the inmate-witness statements were inconsistent with one
another.  T. 25, 38, 43; Docket No. 45-7 at 13.

3

head on the cell divider, regained their feet, exchanged punches, and separated.  T. 18-21,
26, 29-32, 36-37, 41-42, 44-45, 48-51, 65-67; Docket No. 45-7 at 1-2, 5, 10, 11, 13.  Shortly
thereafter, the emergency response team arrived and escorted Tapp to the infirmary and
SHU without incident.  Docket No. 45-7 at 10, 11.  Tapp sustained "one small abrasion to
the [fif]th knuckle on his left hand . . . [and n]o treatment was needed . . ," but Taylor
suffered a "superficial abrasion over [the] right eye, 1/8 inch cut between his eyes, bruising
to [the] bridge of his nose, [a] superficial abrasion to [his] left cheek, [and] chest discomfort."
Docket 45-7at 2, 12.

   On November 13, 2003, Tapp was notified of the Tier III disciplinary hearing[5] on both of
his misbehavior reports.  T. 1; Docket No. 45-12 at 3.  Tapp received assistance preparing
for the disciplinary hearing, which he deemed satisfactory, from B. Rizas.  T. 2, 3.  Prior to
Tapp's hearing, defendant St. Louis, the hearing officer, provided Tapp with documentation
which Tapp had requested, but not received in full.  T. 2.  St. Louis also postponed the start
date of the hearing to allow Tapp time to read the documentation and adequately prepare.
T. 10-11.  Tapp's hearing lasted from November 17 to 25 during which he called and
questioned seven inmate-witnesses[6] and Taylor.  Docket No. 42-3 at 79, 82; Docket No. 45-
12 at 3; see generally T. 25-69.  At the conclusion of the hearing, St. Louis found Tapp

---

   [5]DOCS regulations provide for three tiers of disciplinary hearings depending on the
seriousness of the misconduct charged.  A Tier III hearing, or superintendent's hearing, is
required whenever disciplinary penalties exceeding thirty days may be imposed.  N.Y.
Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2007).

   [6] Tapp requested that more inmates testify during his hearing, but he could not
recall these witnesses' names or bunk locations.  T. 53.  St. Louis explained to Tapp that
he did not need to hear additional testimony from inmate-witnesses if their testimony
would be redundant and Tapp agreed that calling additional inmates would be cumulative.
T. 54-55.

guilty on all charges, sentenced him to twenty-four months in the Special Housing Unit

("SHU"),[7] and precluded Tapp from receiving package, commissary or telephone privileges

for twenty-four months.  T. 69.  Additionally, St. Louis recommended a loss of twenty-four

months of good time credit.  Id.

Tapp appealed his conviction and sentence, but defendant Selsky affirmed on January

8, 2004.  Docket No. 45-15.  However, on February 11, 2004, Selsky administratively

modified the sentence by reducing Tapp's sentence to twelve months in all respects

because the "nature of [the] misconduct d[id] not warrant [the] penalty imposed [especially

in lieu of Tapp's] prior record [which] serve[d] to mitigate [the] penalty."  Docket No. 45-16.

Tapp asserts that after he was sentenced to SHU at Bare Hill, he was placed naked into

a cell with no heat, water, mattress, or toilet paper and a broken window.  Docket No. 42-2

at 11.  Additionally, Tapp claims that he was not fed during the time he remained at Bare

Hill.  "Several hours later [Tapp] was sent to Upstate Corr[ectional] Fac[ility ("Upstate")]

without his property [and] was denied meals every meal for nearly a month," causing him to

lose  substantial weight.  Id.

In January 2004, Tapp was indicted by a Franklin County grand jury for second degree

assault.  Docket No. 42-3 at 85.  It appears that prior to March 18, 2004, Tapp was

transferred to Southport Correctional Facility.  Docket No. 42-4 at 1.  In May 2004, Tapp

was transferred to Upstate Correctional Facility ("Upstate") to appear in his pending criminal

---

[7]SHUs exist in all maximum and certain medium security facilities.  The units
"consist of single-occupancy cells grouped so as to provide separation from the general
population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are
confined in a SHU as discipline, pending resolution of misconduct charges, for
administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

matter and alleges that upon arrival, his property was seized, searched, and confiscated, including his shampoo, stamps, and legal materials.  Docket No. 45-9 at 1.  Tapp filed a grievance concerning his missing property at Upstate, which was denied at every level. Docket No.42-4 at 12.  The criminal charges against Tapp were eventually dismissed. Docket No. 42-2 at 11.  This action followed.

## II.  Discussion

In his complaint, Tapp alleges that defendants violated his (1) First Amendment rights by retaliating against him for writing a grievance concerning the events on the morning of November 12, 2003; (2) Eighth Amendment rights for subjecting him to excessive force and inhumane conditions of confinement; (3) Fourteenth Amendment rights for a denial of due process during his disciplinary hearing; and(4) Fourteenth Amendment and state law rights for malicious prosecution.

Defendants move for summary judgment claiming that (1) Tapp cannot sustain an Eighth Amendment claim as he suffered no serious injury and only de minimis force was used; (2) Tapp cannot sustain a claim for denial of due process because he received all the process to which he was entitled during his hearing; (3) certain due process claims are barred by case law; (4) Tapp failed sufficiently to allege a retaliation claim; (5) Tapp has no constitutional right to correct misbehavior reports; (6) even liberally construing Tapp's complaint, he is unable to allege facts sufficient to prove jurisdiction or the merits of malicious prosecution; and (7) defendants are entitled to qualified immunity.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, __ F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted))..  However, the mere existence of

7

some alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no genuine issue

of material fact.  <u>Anderson</u>, 477 U.S. at 247-48.


## B. Eighth Amendment[8]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual

punishment."  U.S. CONST. amend. VIII.  The Supreme Court has established that inmates

enjoy Eighth Amendment protection against the use of excessive force and may recover

damages for its violation under 42 U.S.C. § 1983.  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9-10

(1992).  The Eighth Amendment's prohibition against cruel and unusual punishment

precludes the "unnecessary and wanton infliction of pain."  <u>Gregg v. Georgia</u>, 428 U.S. 153,

173 (1976); <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive

force under the Eighth Amendment, a plaintiff must establish both objective and subjective

elements.  <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999).

---

[8] Liberally construing Tapp's allegations, he contends he was confined in inhumane
conditions in violation of the Eighth Amendment.  Docket No. 42-2 at 11.  "The
Constitution does not mandate comfortable prisons but neither does it permit inhumane
ones, and it is now settled that the treatment a prisoner receives in prison and the
conditions under which he is confined are subject to scrutiny under the Eighth
Amendment."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1970); <u>see</u> <u>also</u> <u>Johnson v. Smith</u>,
No. 03-CV-1050 (FJS/DEP), 2006 WL 1843292 at *8 (N.D.N.Y. June 29, 2006).
"Conditions of confinement only constitute an Eighth Amendment violation if they involve
the deprivation of a single identifiable human need or denial of the minimum civilized
measure of life's necessities, and the defendants' state of mind was one of deliberate
indifference to that deprivation."  <u>Johnson</u>, 2006 WL 1843292 at *9 (citations omitted).
Based upon Tapp's allegations of being intentionally placed into a cold cell, naked, and
without heat, water, food, or a mattress, there is no question that he has successfully
alleged facts sufficient to constitute an Eighth Amendment claim.  However, defendants
did not identify these allegations as a separate claim or other wise address them and,
therefore, this claim remains pending.

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotations and citations omitted).

In this case, it is not disputed that the laceration on Tapp's finger was not a serious

9

injury.  This failure to satisfy the objective prong alone suffices to defeat Tapp's claim here unless Tapp can raise a question of fact whether Taylor's conduct was undertaken with malice for the very purpose of causing harm to Tapp.    Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9); see also Paterson v. Goord, No. 9:06-CV-0211, 2008 WL 623123, at *8 n.33 (N.D.N.Y. Mar. 4, 2008) (Mordue, C.J.) (citing cases holding that finger injuries, without more, are generally insufficient to meet the objective prong under Eighth Amendment).

   Tapp asserts that after complying with Taylor's direct order, Taylor followed him down the corridor and punched him in the back of the head without reason.  This assertion suffices to raise a question of fact whether Taylor acted with malice for the very purpose of causing harm to Tapp.  T. 35, 44; Docket No. 45-7 at 13.  If Tapp's statement is credited, this alleged blow was not motivated by good faith intentions or concerns for restoring discipline or maintaining institutional safety.  If credited, the facts, as asserted by Tapp and at least partially corroborated by multiple inmate-witnesses, demonstrate that Taylor struck Tapp for no reason other than to maliciously and sadistically cause harm.  As Taylor has alleged a completely opposing account of the events occurring on November 12, there exists a genuine issue of material fact as to what actually transpired.  This question of fact relates only to Taylor, however, as no evidence has been proffered that either Selsky or St. Louis played any role in the incident.

   Accordingly, Tapp's motion on this ground should be denied and defendants' cross-motions should be granted as to Selsky and St. Louis and denied as to Taylor.

## C. Fourteenth Amendment

### 1. Due Process[9]

Tapp contends that defendants violated his due process rights by filing, convicting, and sentencing him on a false misbehavior report, having a biased hearing officer who refused to allow him to call all of his witnesses, and subjecting him to harsh and atypical prison conditions.  Defendants contend that Tapp received all the process necessary.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996). The fact that in inmate has been disciplined with a SHU confinement alone is insufficient to establish an atypical and significant deprivation.  The Second Circuit has articulated a two-part test whereby the length of time a prisoner was placed in SHU as well as "the conditions of the prisoner's confinement in SHU relative to the conditions of the general prison population" are to be

---

[9] With regard to Tapp's allegations that he did not receive due process concerning his criminal indictment for assault, those claims must be pursued against the entity and individuals responsible for the prosecution.  DOCS has no part in determining or according the process followed in a criminal case and the defendants here are thus not the proper parties.  Additionally, with respect to any due process deprivations that Tapp allegedly suffered at Southport and Upstate, the proper defendants for those claims are the those individuals who provided Tapp with his care, or lack thereof.  As such, those claims will not be further discussed as the defendants named in this action are not alleged to have participated in any way in the violations at either facility.

considered.  Vasquez v. Coughlin, 2 F. Supp. 2d 255, 259 (N.D.N.Y.1998) ( citing Brooks v. DiFasi, 112 F.3d 46, 49 (2d Cir.1997)).

Where an inmate is entitled to due process at a disciplinary hearing, the process an inmate may expect includes "written notice of the charges against them, the opportunity to appear at the hearing and to call witnesses, a written notice of the fact-finder setting out the evidence relied upon and the reason for any disciplinary action taken, and, for illiterate inmates or in complex cases, the aid of fellow inmates to collect and present evidence." Richardson v. Van Dusen, 833 F. Supp. 146, 152 (N.D.N.Y. 1993) (citing Wolff, 418 U.S. at 563-67; Freeman v. Rideout, 808 F.2d 949, 954-55 (2d Cir. 1986).

Defendants do not contend here that Tapp did not suffer an atypical and significant hardship.  Defendants do contend, however, that Tapp received the process which he was due.  On November 13, 2003, Tapp received notice of the hearing.  T. 1; Docket No. 45-12 at 3.  Additionally, Tapp received assistance from an individual of his choosing, requested and questioned seven inmate-witnesses and Taylor, and requested and received all documentation he deemed pertinent for his use during the hearing.  T. 2-3, 10-11. Additionally, Tapp was present, and actively participated, in all parts of his hearing.

Prisoners have a constitutional right to have a fair and impartial hearing officer preside over their disciplinary hearings.  See e.g., Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . .  [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."  Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted).  While the Supreme Court held in Hill "that the requirements of due process are satisfied if some evidence supports

the decision by the [hearing officer] . . . .", the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt." Luna v. Pico, 356 F.3d 481, 487-88 (2d Cir. 2004); see also Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Although Tapp claims that St. Louis was not an impartial hearing officer, nothing in the hearing transcript or Tapp's submissions indicate that he was biased in any regard. Additionally, the inconsistency of the inmate-witnesses' testimony, Taylor's outstanding officer's record, the negative findings of the reports of the Office of the Inspector General, the physical injuries sustained by Taylor, and the lack thereof sustained by Tapp all serve as reliable evidence supporting St. Louis' conviction and sentencing of Tapp.

Tapp argues that St. Louis' rulings prohibiting Tapp from calling additional inmate witnesses was in error. However, "[i]t is well settled that an official may refuse to call witnesses as long as the refusal is justifiable [such as denying] . . . a prisoner's request [for calling a witness] . . . on the basis of irrelevance or lack of necessity." Scott v. Kelly, 962 F.2d 145, 146-47 (2d Cir. 1992) (internal quotations and citations omitted); see also Richardson, 833 F. Supp. at 152. First, Tapp could neither identify by name or bunk number the witnesses he wished to call. Thus, St. Louis could not know if the witnesses had relevant personal knowledge of the events. Additionally, St. Louis explained in detail that he was not interested in redundant testimony as it is cumulative and irrelevant. T. 54-55. Tapp both acknowledged that he understood what redundant testimony was and that the unidentified inmate-witnesses would be providing such testimony. Id. Therefore, St. Louis justifiably refused the additional testimony since it was both irrelevant and unnecessary.

Thus, even construing the facts in the light most favorable to Tapp, he cannot prove facts sufficient to dispute that the process he received during his disciplinary hearing met the requirements of the Fourteenth Amendment.  Accordingly, Tapp's motion on this ground is denied and defendants' cross-motion on this ground is granted.

### 2. False Misbehavior Report

Tapp alleges that defendants submitted a false misbehavior report.  A "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  Freeman, 808 F.2d at 951.  "There must be more, such as retaliation against the prisoner for exercising a constitutional right."  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1988)).

However, regardless of whether Tapp asserts a retaliation claim, his contentions run afoul of the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477, 487-87 (1994). That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983.  This rule applies to challenges to procedures used in prison disciplinary proceedings.  Edwards. v. Balisok, 520 U.S. 641 (1997).  There is no evidence that Tapp's disciplinary determination was ever vacated, only that his sentence was reduced.  Therefore, because his recovery of damages here for a false misbehavior report would necessarily imply the invalidity of his conviction on that report, his claim here

14

cannot stand.

Accordingly, Tapp's motion as to the false misbehavior report is denied and defendants' cross-motion is granted.


### D. Retaliation[10]

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). "Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone." Jackson v. Onondaga County, 549 F. Supp. 2d 204, 215 (N.D.N.Y. 2008) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Additionally, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. Id. Conclusory allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) (explaining that "claim[s] supported by specific and detailed factual allegations . . . ought usually be pursued with full discovery.")).

In this case, Tapp has not alleged facts sufficient to support a retaliation claim. There is no question that Tapp's conduct in filing grievances and appeals therefrom was conduct protected by the First Amendment. Docket No. 46 at ¶ 7; see also T. 39. However, Tapp has failed to allege facts from which one could conclude that defendants' actions were

---

[10] As stated in note 8 supra with respect to any retaliation which Tapp allegedly suffered at Southport and Upstate, there is no contention that the defendants here participated in any retaliation at either facility. Accordingly, those allegations will not be further discussed herein.

motivated by Tapp's constitutionally protected activities.  Moreover, Tapp's conviction on the disciplinary charges establishes that defendants possessed good cause to charge, convict, and sentence Tapp on the disciplinary charges.  Thus, Tapp's contentions fail to state an actionable retaliation claim.

Accordingly, Tapp's motion should be denied on this ground and defendants' cross-motion should be granted on this ground.


### E. Conspiracy

Tapp appears to allege that defendants and other unnamed officers at Southport and Upstate conspired together to protect Taylor by stealing and destroying Tapp's property and housing him in squalid conditions.

"Section 1985 prohibits conspiracies to interfere with civil rights." Davila v. Secure Pharmacy Plus, 329 F. Supp. 2d 311, 316 (D. Conn. 2004). To state a claim for relief under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); see also Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007).  To demonstrate that a conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the minds to violate [his or] her civil rights." Salgado v. City of N.Y., No. 00-CV-3667 (RWS), 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).  "In addition, the conspiracy must be motivated by some class-based animus." Iqbal, 490 F.3d at 176

(citations omitted).

Here, Tapp does not assert any facts giving rise to a conspiracy.  First, Tapp vaguely asserts conclusory statements relating to an alleged conspiracy between defendants and unnamed officers at two other correctional facilities.  This is insufficient.  See X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999).  Moreover, there are no allegations relating to agreements, or even communications, between the  defendants and these unidentified individuals, the purpose of their alleged conspiracy, or an intent to deprive Tapp of privileges of the law.

Additionally, Tapp broadly states that defendants negligently failed to prevent the deprivation of his rights.  If any defendant "ha[d] knowledge that any of the wrongs . . . mentioned in section 1985 . . . [we]re about to be committed, and ha[d] power to prevent or aid in preventing the commission of the same, [and] neglect[ed] or refuse[d] so to do . . . , [he] shall be liable to the party injured."  42 U.S.C. § 1986.  However, "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).  No such viable claim exists here.

Accordingly, Tapp's motion on this claim should be denied and defendants' cross-motion should be granted.

**F. Malicious Prosecution[11]**

To establish a claim for malicious prosecution under § 1983, "the plaintiff must show that a prosecution was initiated against him, that it was brought with malice but without probable cause to believe that it could succeed and that the prosecution terminated in favor of the accused plaintiff." Boyd v. City of N.Y., 336 F.3d 72, 76 (2d Cir. 2003).  Additionally, "[a] presumption of probable cause is created. . . by a grand jury's indictment . . . [which] may be overcome by evidence establishing that . . . witnesses have not made a complete and full statement of facts . . . that they have misrepresented or falsified evidence . . . or otherwise acted in bad faith." Id. (internal citations and quotations omitted).  Finally, after an indictment has occurred, the plaintiff must prove "that the indictment was produced by fraud, perjury, the suppression of evidence or other . . . conduct undertaken in bad faith." Id. (citations omitted).

In the present case, Tapp cannot establish the second element of malicious prosecution since he was indicted by a grand jury which is presumed to establish probable cause. Without more than Tapp's conclusory allegations and even reading the facts in the light most favorable to him, there is no evidence that the indictment was produced in bad faith because there was sufficient evidence for a person reasonably to believe that an altercation occurred which, at the least, left Taylor with facial lacerations, contusions, and chest pains.

---

[11] Additionally, any state law malicious prosecution claim that Tapp would attempt to bring into federal court by pendent jurisdiction is not viable, as pursuant to New York State Corrections Law § 24, "[a]ny claim for damages arising out of any act done . . . within the scope of . . . employment and in the discharge of the duties of any officer or employee of [DOCS] shall be brought and maintained in the court of claims as a claim against the state."  N.Y. Corr. Law §24(2).  Thus,  because he is suing for damages, Tapp must litigate any such state law claim in the New York Court of Claims.

Accordingly, no such viable claim lies here.  Tapp's motion on this claim should be denied and defendants' cross-motion should be granted.

### G. Qualified Immunity

___Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

With regards to (1) Tapp's First Amendment retaliation claim, (2) his Fourteenth Amendment claims regarding the misbehavior report and disciplinary hearing, and (3) any

excessive force claim against Selsky or St Louis, the second prong of the inquiry need not be reached because, as discussed supra, Tapp has not shown that defendants violated his constitutional rights.  However, as to Tapp's Eighth Amendment excessive force claim against Taylor,  the second prong of the inquiry must be met because a question of fact exists whether there was a violation of Tapp's Eighth Amendment rights.  It cannot reasonably be said that Taylor was unaware of a prisoner's right to be free from the application of excessive force.  Thus, questions of fact as to both prongs of Taylor's assertion of qualified immunity preclude the grant of such immunity on this motion.

Therefore, it is recommended in the alternative that defendants' cross-motion on this ground be granted in all respects except as to Tapp's excessive force claim against Taylor, as to which defendants' cross-motion should be denied.


## III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

A.  Tapp's motion for summary judgment (Docket No.42) be **DENIED** in all respects; and

B.  Defendants' cross-motion for summary judgment (Docket No. 45) be:

1.  **DENIED** in all respects as to Tapp's Eighth Amendment claim of excessive force as to Taylor and as to Tapp's Eight Amendment claim regarding conditions of confinement (see note 8 supra) as to all three defendants; and

2.  **GRANTED** in all other respects.

20

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  August 15, 2008
       Albany, New York

_David R. Homer_

United States Magistrate Judge