**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SEAN TAPP,
                      Plaintiff,

    v.                                           No. 05-CV-1442
                                                        (LEK/DRH)

LLOYD TAYLOR, C.O.; ST. LOUIS, Captain;
and DONALD SELSKY,
                      Defendants.

---

**APPEARANCES:**                             **OF COUNSEL:**

SEAN TAPP
HF 7739
SCI Huntingdon
1100 Pike Street
Huntingdon, Pennsylvania 16654-3199[1]

HON. ANDREW M. CUOMO             JUSTIN C. LEVIN, ESQ.
Attorney General for the                Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff pro se Sean Tapp ("Tapp"), an inmate formerly in the custody of the New York

---

[1] This address is that used by defendants for service on plaintiff. See, e.g., Docket No. 55 at 2. The docket, however, lists another address for plaintiff based on the address listed for plaintiff in an unrelated case (Tapp v. Tougas, No. 05-CV-1479 (NAM/DEP) (N.D.N.Y. filed Nov. 29, 2005)). See Docket entry dated 2/19/09. The address listed in that case is Lancaster County Prison, 625 East King Street, Lancaster, Pennsylvania 17602. The Clerk shall serve copies of this report-recommendation on plaintiff at both addresses.

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services ("DOCS") and currently incarcerated in Pennsylvania, brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, three DOCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Compl. (Docket No. 1). Presently pending is the motion of defendants Selsky and St. Louis for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 54. Tapp opposes the motion. Docket No. 56. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The facts and procedural history of this case are set forth in the Report-Recommendation and Order filed August 15, 2008, familiarity with which is assumed. See Docket No. 47. The Report-Recommendation was approved in its entirety and defendants were granted thirty days to file a second motion for summary judgment regarding Tapp's Eighth Amendment claim concerning conditions of confinement. Docket No. 53 at 3. Additional facts relevant to the present motion are related below in the light most favorable to Tapp as the non-moving party. See subsection II(A) infra.

After a finding of guilt in a disciplinary hearing, Tapp was transferred to the Special Housing Unit ("SHU")[3] at Bare Hill Correctional Facility ("Bare Hill") on November 11, 2003. Docket No. 56 at 1. Tapp was placed naked into a cell with no heat, water, mattress, or

---

[3]SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

2

toilet paper and with a broken window.  Id.  Tapp was not fed during his time at Bare Hill. Id. at 1-2.  Hours after arriving at Bare Hill, Tapp was transferred again to Upstate Corr[ectional] Fac[ility] ("Upstate") without his property and again was not fed "for nearly a month," causing substantial weight loss.  Docket No. 42-2 at 11; see also Docket No. 56 ¶ 1.  After approximately one month at Upstate, Tapp was transferred to Southport Correctional Facility ("Southport") , briefly stopping at Downstate Correctional Facility ("Downstate").  Docket No. 56 ¶ 2.  While at Downstate, Tapp "was forced to sleep in a cell with ultra high white bright lights that never cut[] off or . . . dim[med]."  Id. ¶ 3.  Throughout this transfer process, Tapp suffered from "headaches, insomnia, [and] physical [and] mental anguish."  Id.  When Tapp finally arrived at Southport, he was housed in a feces-infested cell.  Id.  ¶ 4.  The living conditions prevented him from eating, resulting in additional weight loss and exposure to highly contagious diseases.  Id.

During the time in question, Selsky was the DCS Director of SHU and was "responsible for the administrative function of [SHUs; h]owever, day-to-day management responsibilities for DOC's SHUs [was] the responsibility of each facility's superintendent and his or her staff."  Selsky Decl. (Docket No. 54-6) ¶¶ 5-6.  Selsky was neither informed, nor did he have reason to believe, that (1) inmates were required to sleep with bright lights on at Downstate; (2) inmates were forced to remain naked in their cells without food, water, a mattress or toilet paper while incarcerated at Bare Hill; and (3) inmates were forced to stay in feces-infested cells at Southport.  Id.  ¶¶ 7-14.

Defendant St. Louis was employed as a Captain at Bare Hill and thus had no knowledge of the incidents occurring at other facilities' SHUs.  St. Louis Decl. (Docket No. 54-7) ¶¶ 2-6, 17-21.  While staff were primarily responsible for the day-to-day operation of the Bare Hill

3

SHU, St. Louis made daily rounds to "ensure that SHU complied with the applicable regulations." Id. ¶ 11. On the day that Tapp was housed in Bare Hill's SHU, St. Louis made rounds and "did not witness any inmate, including plaintiff, naked in a cell with an open window lacking heat, water, a mattress, or toilet paper." Id. ¶ 12. St. Louis did not witness, nor was he advised by staff or other inmates, of, anything unusual occurring in SHU that day. Id. ¶¶ 13-14.

## II. Discussion

In his complaint, Tapp alleges that defendants violated his Eighth Amendment rights by subjecting him to inhumane conditions of confinement. Defendants move for summary judgment claiming that (1) Tapp cannot sustain an Eighth Amendment claim; (2) Tapp has failed to establish the personal involvement of Selsky or St. Louis; and (3) Selsky and St. Louis are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).. However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Personal Involvement

Defendants contend that Tapp has failed to establish the personal involvement of Selsky or St. Louis. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is

5

a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

>  (1) [T]he defendant participated directly in the alleged constitutional violation;
>
>  (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
>  (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
>  (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
>  (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

A position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. Thus, Selsky, the DOCS Director of Special Housing, cannot be held liable solely because he held supervisory positions over other corrections officials working in SHUs. For the same reasons, St. Louis, who oversaw the SHU at Bare Hill, cannot be held liable merely for his position of authority over subordinates.

Tapp does not contend that either Selsky or St. Louis was directly involved with the alleged constitutional violations. In fact, Tapp fails to name any of the particular individuals involved in creating these conditions, stating that "unknown officers" turned off his water and heat and took his personal effects at Bare Hill, and that he was refused food at

6

Upstate, subjected to constant bright lights at Downstate, and prohibited from cleaning or moving from a feces-infested cell at Southport. Docket No. 56 at 1-2.

The only allegations Tapp proffers against Selsky is that Tapp filed multiple grievances during his incarceration. Tapp Dep. at 44-49. Filing grievances alone, however, will not suffice to sustain a claim for personal involvement because Selsky was not involved in the day-to-day operation of the individual SHUs, a responsibility appropriately delegated to facility staff. See Garrido v. Coughlin, 716 F. Supp. 98, 100 (S.D.N.Y.1989) (holding that Commissioner of DOCS not personally liable for ignoring plaintiff's letter of protest and request for an investigation). Thus, even construing the complaint in the light most favorable to Tapp, any allegations of personal involvement by Selsky still lack any factual basis. Furthermore, there are no facts asserted that Selsky created a hiring or retention policy which allowed constitutional violations to continue or was grossly negligent in managing other defendants.

Conversely, Tapp specifically states that prior to his transferred from Bare Hill, St. Louis made "rounds and bore witness with his own eyes to [Tapp's] situation in SHU." Docket No. 56 ¶ 3. St. Louis states that he made daily rounds to "ensure that SHU complied with the applicable regulations." St.Louis Decl. ¶ 11. He further states that on the day that Tapp was housed in Bare Hill's SHU, St. Louis made rounds but "did not witness any inmate, including plaintiff, naked in a cell with an open window lacking heat, water, a mattress, or toilet paper." Id. ¶ 12. Thus, a question of fact exists as to St. Louis' personal involvement precluding summary judgment.

Accordingly, defendants' motion on this ground should be granted as to Selsky and denied as to St. Louis.

7

**C. Eighth Amendment**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1970). As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). Thus, "[c]onditions of confinement only constitute an Eighth Amendment violation if they involve the deprivation of a single identifiable human need or denial of the minimum civilized measure of life's necessities, and the defendants' state of mind was one of deliberate indifference to that deprivation." Johnson v. Smith, No. 9:03CV1050 (FJS/DEP), 2006 WL 1843292, at *9 (N.D.N.Y. June 29, 2006) (Scullin, J.) (citations omitted).

The objective prong can be satisfied by

> conditions of confinement . . . [which] in combination [constitute an Eighth Amendment violation] when each would not do so alone . . . [such as] when the conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets.

Davidson v. Murray, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005) (citations omitted). However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Id. (citing Wilson v. Seiter, 501 U.S. 294, 304-05 (1991)). The subjective prong requires "a prison official [to] have a sufficiently culpable state of mind . . ., of deliberate indifference to inmate

health or safety" Farmer, 511 U.S. at 834 (citations omitted).

Tapp claims that while he was at Bare Hill, St. Louis was aware that Tapp was being housed naked, without a mattress or other personal effects, in November in a room with no heat or water and an open window. Docket No. 56 at 1. These conditions, even if extremely uncomfortable, were endured, at most, for five hours after which Tapp was transferred out of Bare Hill. Considering both the "duration . . . [and] the totality of the specific circumstances that constituted the conditions of [his] confinement, with particular regard for the manner in which some of those conditions ha[d] a mutually enforcing effect," Tapp has failed to demonstrate an Eighth Amendment violation. Palmer v. Johnson, 193 F.3d 346, 354 (5th Cir. 1999) (holding that seventeen hours of "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of a bathroom . . . constituted a denial of the minimal civilized measure of life's necessities.") (internal quotation marks and citations omitted). Tapp was only subjected to these extraordinary conditions for a fraction of the time in Palmer. Moreover, Tapp was still in a cell, substantially sheltered from the elements even if the temperature was inclement in the cell. Thus, while the conditions at Bare Hill were unconscionable, their duration was not so long as to rise to the level of a constitutional deprivation.

Furthermore, Tapp has failed to show how this brief stay at Bare Hill's SHU rose to the level of a substantial risk of serious harm or denial of an identifiable human need. See Legler v. Bruce, No. 06-CV-3311 (SAC), 2007 WL 4241845, at *4 (D. Kan. Nov. 17, 2007) ("Plaintiff still fails to allege facts indicating how [stained linens, dirty dishes, or inadequate food] . . . created an unconstitutionally high exposure to illness or injury or that he or other .

9

. . inmates became ill . . . ."). Tapp makes no contentions of unusual cold, suffering illness or injury. This is especially telling in light of Tapp's subsequent contentions in his last submission detailing specifically the injuries sustained as a result of constant exposure to light at Downstate, including "headaches, insomnia [and] physical and mental anguish." Docket No. 56 ¶ 3.

As Tapp has failed to satisfy the objective prong of the Eighth Amendment analysis, Selsky and St. Louis should be granted judgment on that ground and the subjective prong need not be addressed. However, even construing the facts in the light most favorable to Tapp, there is no evidence that Selsky was culpable or acted with deliberate indifference. There has been presented no evidence other than Tapp's conclusory allegations that Selsky even had knowledge of the conditions alleged by Tapp.

As to Tapp's allegations concerning Upstate, Downstate, and Southport, Tapp has failed to name as defendants any individuals who engaged in the acts which occurred at any of those facilities. In particular, Tapp has offered no evidence that either Selsky or St. Louis had any involvement at any of those facilities. As previously stated, personal involvement is a prerequisite to recovery under § 1983. Wright, 21 F.3d at 501; Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). Therefore, to the extent that Tapp has alleged Eighth Amendment violations at the other three facilities, Selsky and St. Louis are entitled to judgment on those claims.

Accordingly, the motion of Selsky and St. Louis for summary judgment on this ground should be ground.

**D. Qualified Immunity**

Selsky and st. Louis contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning any of Tapp's claims because, for the reasons discussed above, Tapp has failed to raise a question of fact as to the first prong of the inquiry.

Accordingly, in the alternative, the motion of Selsky and St. Louis on this ground should be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment as to Selsky and St. Louis  (Docket No. 54) be **GRANTED** as to all claims, these two defendants be terminated from this action, and the case proceed only as to  defendant Taylor.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  July 16, 2009
           Albany, New York

_David R. Homer_
United States Magistrate Judge